IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**EVERETT L. SAMPSON,**

        **Applicant,**

**v.**                                                  **No.  CIV-05-1210 BB/LAM**

**C. MICHAEL MARTIN, et al.,**

        **Respondents.[1]**

# **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[2]**

## **PROPOSED FINDINGS**

    1.      **THIS MATTER** is before the Court on Respondents' *Motion to Dismiss* (*Doc. 29*) (hereinafter, "Motion to Dismiss"), filed on January 26, 2007.  The undersigned has considered the Motion to Dismiss, the parties' submissions, the record of this case and relevant law.[3]  For the

---

[1] As the undersigned noted in her proposed findings and recommended disposition filed in this case on September 15, 2006, Mr. Sampson is no longer incarcerated, having been released on probation.  *See Proposed Findings and Recommended Disposition* (*Doc. 23*) at 13, n. 23.  At that time, the Court stated that Mr. Sampson should be allowed to substitute as respondent(s) in this case the state official(s) responsible for the administration of his probation.  *Id.*  However, Mr. Sampson has not done this and Respondents have not objected to the absence of a probation official as a respondent in this case.  Given that the New Mexico Attorney General is both a named respondent and the attorney representing the State in this proceeding, the Court finds that the State of New Mexico has waived any objection to the absence of a state probation official as a respondent in this case.  *See Smith v. Idaho*, 392 F.3d 350, 355, n. 4 (9th Cir. 2004) (noting several federal circuit decisions indicating that "the failure to name the proper respondent is a defect that may be waived by the relevant government entity.")

[2] **Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition.  A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

[3] In support of their Motion to Dismiss (*Doc. 29*), Respondents filed their *Memorandum in Support of Motion to Dismiss* (*Doc. 30*) (hereinafter, "Memorandum in Support of Motion"), on January 26, 2007.  In response to the Motion to Dismiss, Mr. Sampson filed his *Memorandum in Support of Motion* (*Doc. 31*) (hereinafter, "Response"), on February 2, 2007.  Respondents filed their *Reply in Support of Motion to Dismiss* (*Doc. 32*) on March 1, 2007.

reasons set forth below, the undersigned recommends that the Motion to Dismiss be **GRANTED**, that Mr. Sampson's *Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody* (*Doc. 1*) (hereinafter, "Application") be **DENIED** as without merit, and that this case be **DISMISSED WITH PREJUDICE**. Because the issues in this case can be resolved on the record before the Court, the undersigned **FINDS** that an evidentiary hearing is unnecessary.[4]

2.     Mr. Sampson initiated this case on November 17, 2005, by filing his Application seeking habeas relief pursuant to 28 U.S.C. § 2254. Because he is a *pro se* litigant, the Court construes his Application liberally and holds it to a less stringent standard than pleadings drafted by an attorney.[5]

3.     Although Mr. Sampson was incarcerated when he filed his Application, he has since been released from prison.[6] Because Mr. Sampson is still on probation, this renders him "in custody" for purposes of 28 U.S.C. § 2254.[7] Mr. Sampson was incarcerated, and placed on probation, pursuant to a judgment, sentence, order and commitment entered in the state district court

---

[4]*See* 28 U.S.C. § 2254(e)(2); Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; *Anderson v. Attorney General of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.").

[5]*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[6]*See* **Motion for Change of Address** (*Doc. 21*), which the Court construed as a notice of change of address.

[7]*See Jones v. Cunningham*, 371 U.S. 236, 238-243 (1963) (conditional release from physical confinement under sentence in question satisfied "in custody" requirement for federal habeas relief); *see also United States v. Condit*, 621 F.2d 1096, 1098 (10th Cir. 1980) (probation, like parole, constitutes "custody" for purposes of habeas corpus statutes).

in San Juan County, New Mexico, on March 29, 2005, in criminal cases numbered CR-2004-0888-4 and CR-2004-0889-4.[8]

4. Mr. Sampson asserted multiple claims in his Application; however, his Application was a mixed habeas petition which contained both exhausted and unexhausted claims.[9] Mr. Sampson's claims that were exhausted had been submitted for appellate review to the New Mexico Supreme Court; his unexhausted claims had not.[10]

5. On October 17, 2006, Mr. Sampson filed a document (*Doc. 26*) which the presiding judge in this case construed as a motion asking the Court to consider only his exhausted claims and impliedly asking the Court to dismiss his unexhausted claims without prejudice.[11] On January 10, 2007, after giving Mr. Sampson the opportunity to have all of his claims dismissed from this case, without prejudice,[12] the presiding judge entered an order granting Mr. Sampson's motion (*Doc. 26*) and dismissing his unexhausted claims without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2).[13] This left Mr. Sampson's exhausted claims as the only remaining claims in this proceeding.

---

[8]*See **Answer** (Doc. 14)* (hereinafter, "Answer"), Exhibit A.

[9]*See **Proposed Findings and Recommended Disposition** (Doc. 23)*, adopted with modification in ***Order Adopting, With Modification, Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 23), Granting Respondents' Motion to Dismiss (Doc. 12), and Denying as Moot Petitioner's Motion to Grant Post-Conviction Relief & Set Aside Judgment, Sentence (Doc. 17)** (Doc. 27)*.

[10]*Id.*

[11]*See **Order Adopting, With Modification, Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 23), Granting Respondents' Motion to Dismiss (Doc. 12), and Denying as Moot Petitioner's Motion to Grant Post-Conviction Relief & Set Aside Judgment, Sentence (Doc. 17)** (Doc. 27)* at 2-4.

[12]*Id.* at 2-5.

[13]*See **Order Granting Petitioner's Motion to Dismiss His Unexhausted Claims (Doc. 26) and Setting Deadline for Filing and Serving Dispositive Motions With Regard to His Exhausted Claims** (Doc. 28)*, at 2.

6.	As decided in previous orders entered in this case by the presiding judge, Mr. Sampson's exhausted claims, which are his remaining claims, are his claims that: (a) his constitutional rights to due process and equal protection were violated because (i) his sentences for Counts 2 and 4 in case numbered CR-2004-0889-4 were imposed to run consecutively, not concurrently, contrary to the state district judge's statements at his sentencing hearing, and (ii) the prosecutor illegally altered and modified his sentence by causing a period of unsupervised probation of three-hundred and sixty-two days to be added to the sentence; (b) he was denied effective assistance of counsel because his trial attorney (i) failed to provide Mr. Sampson with any copies of his plea agreement following the plea hearing held on February 28, 2005, (ii) failed to keep him reasonably informed about his case or promptly comply with his reasonable requests for information, and (iii) failed to explain his plea to the extent reasonably necessary for him to make an informed decision about the plea; and (c) his trial attorney and the State refused to provide him with copies of his plea agreement solely for the purpose of keeping him from withdrawing his plea.[14]  As relief, Mr. Sampson asks the Court to "grant him such relief to which he may be entitled in this proceeding."[15]

---

[14] *See **Order Adopting, With Modification, Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 23), Granting Respondents' Motion to Dismiss (Doc. 12), and Denying as Moot Petitioner's Motion to Grant Post-Conviction Relief & Set Aside Judgment, Sentence (Doc. 17)** (Doc. 27)* at 3, n. 3; ***Order Granting Petitioner's Motion to Dismiss His Unexhausted Claims (Doc. 26) and Setting Deadline for Filing and Serving Dispositive Motions With Regard to His Exhausted Claims*** *(Doc. 28)* at 3, n. 3.

[15] Application (*Doc. 1*) at 13.

7.      In their Answer and their Motion to Dismiss, Respondents ask the Court to dismiss Mr. Sampson's Application and dismiss this case with prejudice for failure to state a meritorious constitutional claim cognizable under § 2254.[16]

### *I. Factual and Procedural Background*

8.      On February 28, 2005, Mr. Sampson entered into a plea agreement in which he agreed to plead guilty to the misdemeanor offenses of battery against a household member and violation of a protection order in case numbered CR-2004-0889-4, and battery against a household member in case numbered CR-2004-0888-4.[17]  Both cases were filed in the state district court of San Juan County, New Mexico.  In the plea agreement, Mr. Sampson agreed to waive "the right to appeal the conviction that results from the entry of this plea agreement."[18]

9.      On February 28, 2005, Mr. Sampson entered his guilty plea and on March 29, 2005, the state court entered its judgment, sentence, order and commitment sentencing Mr. Sampson to incarceration for a period of three years less three days, with execution of his sentence suspended except for two years, which was to be served in the custody of the New Mexico Department of Corrections.[19]  The state court ordered that Mr. Sampson be placed on unsupervised probation for three-hundred and sixty-two days upon completion of his term of incarceration.[20]  He was also ordered to pay restitution, even on the counts against him that were dismissed, and a domestic

---

[16]*See* Answer (*Doc. 14*) at 4; Motion to Dismiss (*Doc. 29*) at 1.

[17]*See* Answer (*Doc. 14*), Exhibit C.  The plea agreement provided that these sentences would run consecutively and that there were "[n]o other agreements as to sentence."  Answer (*Doc. 14*), Exhibit C at 1.

[18]Answer (*Doc. 14*), Exhibit C at 2.

[19]*See* Answer (*Doc. 14*), Exhibit A at second page.

[20]*Id.*

violence offender treatment fee.[21]  He was given credit for pre-sentence confinement of fourteen days and credit for post-sentence confinement until his delivery to the Corrections Department.[22] On September 22, 2005, the state court entered a corrected judgment, sentence, order and commitment making a correction to give Mr. Sampson credit for pre-sentence confinement of thirty-two days instead of fourteen days.[23]

10.     On June 16, 2005, Mr. Sampson filed a motion for reconsideration of sentence with the state district court asking the court to modify his sentence based on multiple grounds.[24]  This motion was denied by the state district court on June 21, 2005.[25]

11.     On August 19, 2005, Mr. Sampson filed a petition for writ of habeas corpus with the state district court asking the court to vacate, set aside or correct his sentence on multiple grounds.[26] This petition was denied on September 12, 2005.[27]  On October 17, 2005, Mr. Sampson filed a petition for writ of certiorari with the New Mexico Supreme Court seeking review of the district

---

[21]*Id.*

[22]*Id.* at third page.

[23]*See* Answer (*Doc. 14*), Exhibit B at third page.

[24]*See* Answer (*Doc. 14*), Exhibit D.  Although described by Mr. Sampson as a motion to reconsider or modify sentence, this motion included requests by Mr. Sampson for withdrawal of his guilty plea and dismissal of the criminal charges against him.  *See* Answer (*Doc. 14*), Exhibit D at 9.

[25]*See* Answer (*Doc. 14*), Exhibit E.

[26]*See* Answer (*Doc. 14*), Exhibit F.

[27]*See* Answer (*Doc. 14*), Exhibit G.

court's denial of his petition for writ of habeas corpus.[28]  On October 25, 2005, the New Mexico Supreme Court entered an order denying the petition for writ of certiorari.[29]

12.	On September 30, 2005, after the state district court denied his petition for writ of habeas corpus, Mr. Sampson filed a second motion for reconsideration of sentence with the district court asking the court to modify his sentence to give him time served and supervised probation for the balance of his sentence.[30]  This motion was denied by the court on November 29, 2005, after the New Mexico Supreme Court denied Mr. Sampson's petition for writ of certiorari.[31]

13.	On November 17, 2005, Mr. Sampson filed his Application (*Doc. 1*) in this case for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Mr. Sampson's remaining claims in this case are described in paragraph 6, above.

## II. Claims for Habeas Corpus Relief

### A. Standards of Review

14.	The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996[32] (hereinafter, "AEDPA"), govern this case.[33]  The Court cannot grant Mr. Sampson habeas relief pursuant to 28 U.S.C. § 2254(d), unless the decision in his state court proceeding (1) is "contrary to, or involved an unreasonable application of, clearly established

---

[28]*See* Answer (*Doc. 14*), Exhibit J.

[29]*See* Answer (*Doc. 14*), Exhibit K.

[30]*See* Answer (*Doc. 14*), Exhibit H.

[31]*See* Answer (*Doc. 14*), Exhibit I.

[32]110 Stat. 1214.

[33]The standards in AEDPA apply to this case because the Application was filed after the effective date of AEDPA which was April 24, 1996.  *See Upchurch v. Bruce*, 333 F.3d 1158, 1162 (10th Cir. 2003), *cert. denied*, 540 U.S. 1050 (2003).

7

Federal law, as determined by the Supreme Court of the United States;" or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[34] The United States Supreme Court has construed these statutory provisions, and established rules for applying them, in a series of cases decided since the enactment of AEDPA.[35]

15.     The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in 28 U.S.C. § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."[36]

16.     Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" United States Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law."[37]  A state court decision is also "contrary to" Supreme Court precedent "if the state court decides [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts."[38] However, a state court decision is not "contrary to" Supreme Court precedent "simply because the court did not cite [Supreme Court] opinions . . . . [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the

---

[34] 28 U.S.C. §§ 2254(d)(1)-(2).

[35] *See, e.g., Fry v. Pliler*, ___ U.S. ___, 75 U.S.L.W. 4404 (U.S. Jun. 11, 2007); *Shriro v. Landrigan*, ___ U.S. __, 75 U.S.L.W. 4315 (U.S. May 14, 2007); *Bell v. Cone*, 543 U.S. 447 (2005) (*per curiam*); *Mitchell v. Esparza*, 540 U.S. 12 (2003) (*per curiam*); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002) (*per curiam*); *Early v. Packer*, 537 U.S. 3 (2002) (*per curiam*); *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Williams v. Taylor*, 529 U.S. 362 (2000); *see also Bush v. Neet*, 400 F.3d 849 (10th Cir. 2005); *Jackson v. Ray*, 390 F.3d 1254 (10th Cir. 2004); *Miller v. Mullen*, 354 F.3d 1288 (10th Cir. 2004).

[36] *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[37] *Williams v. Taylor*, 529 U.S. at 413.

[38] *Id.*

reasoning nor the result of the state-court decision contradicts them.'"[39] Indeed, a state court need not even discuss the federal law applicable to a claim in order for AEDPA standards to apply. So long as the state court does not dismiss a claim on procedural grounds, a federal court applies the AEDPA standards regardless of whether there is any reasoning supporting the "decision."[40] Moreover, if a state court's decision does not conflict with the reasoning or the holdings of Supreme Court precedent, the decision is not "contrary to" such precedent under 28 U.S.C. §2254(d)(1) simply because the federal court holds a different view where Supreme Court precedent "is, at best, ambiguous."[41]

17.     Under 28 U.S.C. § 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[42] However, "a federal habeas court may not issue [a writ of habeas corpus] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly

---

[39]*Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (noting presumption that state courts know and follow the law); *Miller v. Mullin*, 354 F.3d 1288, 1292-1293 (10th Cir. 2004) (AEDPA applicable notwithstanding state court's failure to cite or discuss federal case law).

[40]*See Cook v. McKune*, 323 F.3d 825, 830-831 (10th Cir. 2003); *see also Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002) (discussing that in *Weeks v. Angelone*, 528 U.S. 225 (2000), the Supreme Court applied AEDPA standards of review to a claim the state court dismissed summarily without any explanation of how it reached its decision); *compare Morris v. Burnett*, 319 F.3d 1254, 1267 (10th Cir. 2003) ("[w]hen the state court addresses the great bulk of the issues raised by the petitioner's brief in that court but omits to address a particular claim, we have inferred that the claim was not decided 'on the merits' in the state court . . . [and,] [t]herefore, we do not apply the deferential review set forth in 28 U.S.C. § 2254(d) with respect to that claim.")

[41]*Mitchell v. Esparza,* 540 U.S. at 17.

[42]*Williams v. Taylor*, 529 U.S. at 413.

9

established federal law erroneously or incorrectly."[43]  "Rather, that application must be objectively unreasonable."[44]

18.     Under 28 U.S.C. §§ 2254(d)(2) and (e)(1), a state court decision is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" only if it is shown by "clear and convincing evidence" that the factual finding is incorrect.[45]

19.     The deferential AEDPA standard of review applies to habeas claims that were adjudicated on the merits in state court proceedings.[46]  If the state court did not adjudicate a claim on the merits, and the claim is not otherwise procedurally barred, a federal court reviews the claim *de novo* under the pre-AEDPA standard of review.[47]  Under the pre-AEDPA standard of review, a state court's findings of fact are afforded a presumption of correctness and both legal conclusions and mixed questions of law and fact are reviewed *de novo*.[48]  "[T]he presumption of correctness will continue to apply to any findings of fact underlying mixed questions."[49]

---

[43]*Lockyer v. Andrade*, 538 U.S. at 75-76 (internal quotations and citations omitted).

[44]*Id.* at 76.

[45]*See Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

[46]*See* 28 U.S.C. § 2254(d).

[47]*See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (citing *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999)).

[48]*See Castro v. Ward*, 138 F.3d 810, 815-816 (10th Cir. 1998).

[49]*Id.* at 816 (quoting *Case v. Mondragon*, 887 F.2d 1388, 1393 (10th Cir. 1989)); *see also* 2 Randy Hertz and James S. Liebman, Federal Habeas Corpus Practice and Procedure, § 32.1, at 1565 (5th ed. 2005) (if § 2254 habeas claim was not adjudicated on the merits, federal court must employ pre-AEDPA standard of *de novo* review of legal and mixed legal-factual rulings).

### *B. Analysis*

20.     Subject to the foregoing standards, the Court considers the merits of Mr. Sampson's remaining claims in this case. Because Mr. Sampson's remaining claims were adjudicated on the merits in state court, AEDPA deference applies to their adjudication in this proceeding.

### *1. Violation of Constitutional Rights to Due Process and Equal Protection*

21.     Mr. Sampson contends that his constitutional rights to due process and equal protection were violated because (a) his sentences for Counts 2 and 4 in case numbered CR-2004-0889-4 were imposed to run consecutively, not concurrently, contrary to the state district judge's statements at his sentencing hearing, and (b) the prosecutor illegally altered and modified his sentence by causing a period of unsupervised probation of three-hundred and sixty-two days to be added to the sentence.[50]

### *a. Due Process*

22.     For Mr. Sampson to prevail on his claim that his constitutional right to due process was violated because his sentences for Counts 2 and 4 in case CR-2004-0889-4 were imposed to run consecutively rather than concurrently, he would first have to show that the oral pronouncement of his sentence by the state district judge conflicted with the sentence in the written judgment, sentence, order and commitment.[51] However, as the state district judge found in ruling on Mr. Sampson's state

---

[50]These claims are asserted in Mr. Sampson's Application (*Doc. 1*) at 6, by reference to Attachment D, and in Attachment D at 3.

[51]As a general rule, when the unambiguous oral pronouncement of a sentence conflicts with the sentence as set forth in a written judgment and commitment order, the oral pronouncement controls. *See, e.g., United States v. Villano*, 816 F.2d 1448, 1450-51 (10th Cir. 1987) ("It is a firmly established and settled principle of federal criminal law that an orally pronounced sentence controls over a judgment and commitment order when the two conflict. This rule is recognized in virtually every circuit and has been the law in this circuit since the 1930's. . . . The sentence orally pronounced from the bench is the sentence."); *see also Hill v. United States ex rel. Wampler*, 298 U.S. 460, 464-65 (1936) (oral pronouncement of sentence constituted court's judgment and was controlling). This
(continued...)

habeas petition, the record refutes that there is a conflict as to whether his sentences were to run consecutively or concurrently.[52] At Mr. Sampson's sentencing hearing held on March 21, 2005, the state district judge said that Mr. Sampson's three misdemeanor sentences of three-hundred and sixty-four days each would run consecutively but that his sentence in Case No. CR-2004-0888-4 would be suspended.[53] This oral pronouncement of sentence was consistent with Mr. Sampson's plea and disposition agreement which provided that his sentences for the three misdemeanor offenses would run consecutively.[54] It was also consistent with the state district judge's explanation to Mr. Sampson at his plea hearing that the three misdemeanor sentences would run consecutively which included an explanation by the judge of the meaning of the word "consecutive."[55]

23.     The written judgment, sentence, order and commitment entered by the state district judge in Mr. Sampson's state criminal cases is consistent with the judge's oral pronouncement of sentence with regard to the consecutiveness of Mr. Sampson's sentences. The judgment, sentence,

---

[51](...continued)
rule has its roots in a defendant's constitutional right to be present at sentencing, pursuant to the confrontation clause of the Sixth Amendment, and in the due process clause of the Fifth and Fourteenth Amendments. *See United States v. Villano*, 816 F.2d at 1452 ("A defendant is present only when being sentenced from the bench. Thus, a defendant is sentenced *in absentia* when the judgment and commitment order is allowed to control when there is a conflict.").

[52]*See* Answer (*Doc. 14*), Exhibit G at 2.

[53]*See* Compact Disc (hereinafter, "CD") Digital Audio Recording of Sentencing Hearing on March 21, 2005, in Case No. CR-2004-0888-4 and Case No. CR-2004-0889-4. At the sentencing hearing, the judge initially stated that the sentence for Count 2 in Case No. CR-2004-0888-4 would run concurrently with the sentences for the two counts in Case No. CR-2004-0889-4; however, the judge subsequently corrected this statement after being reminded by the prosecutor that Mr. Sampson's plea and disposition agreement called for the three counts to run consecutively to each other. *Id.* After being reminded of the plea and disposition agreement at the sentencing hearing, the judge said: "Fine - they'll run consecutive. I'll suspend the other." *Id.*

[54]*See* Answer (*Doc. 14*), Exhibit C at 1 ("These sentences will run consecutively. No other agreements as to sentence.").

[55]*See* CD Digital Audio Recording of Plea Hearing on February 28, 2005, in Case No. CR-2004-0888-4 and Case No. CR-2004-0889-4.

order and commitment provides that Mr. Sampson was sentenced to a term of incarceration of three-hundred and sixty-four days for Count 2 in Case No. CR-2004-0888-4, a term of incarceration of three-hundred and sixty-four days for Count 2 in Case No. CR-2004-0889-4, and a term of incarceration of three-hundred and sixty-four days for Count 4 in Case No. CR-2004-0889-4.[56] It further provides that the sentences on Counts 2 and 4 in Case No. CR-2004-0889-4 shall run consecutively to each other, and consecutively to the sentence imposed in Case No. CR-2004-0888-4, for a total term of incarceration of three years less three days.[57] In addition, it provides, *inter alia*, that the execution of Mr. Sampson's sentences be suspended, except for two years, and orders that upon completion of his term of incarceration, Mr. Sampson is to be placed on unsupervised probation for a period of three-hundred and sixty-two days.[58]

24.     Based on the foregoing, the undersigned concludes that Mr. Sampson's due process claim alleging a conflict between his oral sentence and the written judgment, sentence, order and commitment has no merit with regard to the consecutiveness of his sentences. The record provides no support for his claim that the written judgment, sentence, order and commitment in his criminal cases conflicts with the oral pronouncement of sentence in that regard.

25.     Nor is there any support in the record for Mr. Sampson's claim that the prosecutor illegally altered and modified his sentence by causing a period of unsupervised probation of three-hundred and sixty-two days to be added to the sentence. For Mr. Sampson to prevail on this claim, he would have to show that his sentence was altered by the prosecutor. However, as the state district

---

[56]*See* Answer (*Doc. 14*), Exhibit A at 2.

[57]*Id.*

[58]*Id.*

13

judge found in ruling on Mr. Sampson's state habeas petition, the record shows that it was the judge in Mr. Sampson's criminal cases who sentenced him to a period of probation to follow his term of incarceration.[59] This imposition of a probation period occurred as a consequence of the judge suspending one year of Mr. Sampson's sentence at his sentencing hearing and it was required by state law.[60] It is reflected in the written judgment, sentence, order and commitment, signed by the sentencing judge and entered in Mr. Sampson's criminal cases, which provides that: "Execution of this sentence is suspended except for two (2) years which shall be served in the Department of Corrections. Upon completion of this term of incarceration the Defendant is ordered to be placed on unsupervised probation for a period of three hundred sixty-two (362) days on the condition that the Defendant shall observe all federal, state, county and city laws and ordinances."[61] Nothing in the record suggests that the prosecutor altered Mr. Sampson's sentence and the undersigned finds no merit to Mr. Sampson's due process claim based on that allegation.

26.     To the extent that Mr. Sampson's claim regarding probation is construed as alleging that he was denied due process because the oral pronouncement of his sentence contains no mention of probation but the written judgment, sentence, order and commitment imposes a period of probation, his claim also has no merit. Probation, as a matter of state law under N.M. Stat. Ann.

---

[59] *See* Answer (*Doc. 14*), Exhibit G at 2.

[60] Mr. Sampson was sentenced pursuant to N.M. Stat. Ann. § 31-19-1 (1984) which grants sentencing authority to New Mexico courts for misdemeanor criminal convictions. Under this statute, when the court has suspended a sentence for a crime constituting a misdemeanor, probation is mandatory, not discretionary. The relevant portion of the statute provides: "When the court has deferred or suspended sentence, *it shall order the defendant placed on supervised or unsupervised probation for all or some portion of the period of deferment or suspension*." N.M. Stat. Ann. § 31-19-1(C) (1984) (emphasis added). Thus, when the judge at Mr. Sampson's sentencing hearing stated that he would suspend a portion of Mr. Sampson's sentence, probation was a statutorily required part of the suspended sentence under New Mexico law.

[61] *See* Answer (*Doc. 14*), Exhibit A at 2.

§ 31-19-1(C) (1984), was a mandatory part of Mr. Sampson's suspended sentence and the state district judge sentenced Mr. Sampson to a period of unsupervised probation coextensive with the period of his suspended sentence. The only condition of Mr. Sampson's unsupervised probation is that he "shall observe all federal, state, county and city laws and ordinances."[62] Therefore, the written judgment, sentence, order and commitment only made explicit what was implicit in the oral pronouncement of sentence, that Mr. Sampson would serve a period of probation and that his probation would be either supervised or unsupervised. Consequently, the specification of a probationary period in the written judgment, sentence, order and commitment did not conflict with the oral pronouncement of sentence and did not increase Mr. Sampson's sentence. Therefore, the undersigned concludes that Mr. Sampson was not denied due process to the extent he is alleging a claim based on an ostensible conflict between the oral and written pronouncements of sentence with regard to the imposition of probation.

27.   The undersigned concludes, with regard to Mr. Sampson's due process claims, that he has failed to show that the state court's adjudication of these claims was either contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court.[63] Therefore, the undersigned recommends that these claims be denied.

---

[62] Answer (*Doc. 14*), Exhibit A at 2.

[63] *See* 28 U.S.C. §§ 2254(d)(1)-(2).

### b. Equal Protection

28.     Based on the same allegations as his due process claims, Mr. Sampson contends, without explanation, that his constitutional right to equal protection was violated.[64] However, he fails to allege that he was treated differently than any other similarly situated persons. The fundamental guarantee of the Equal Protection Clause is that "all persons similarly situated should be treated alike."[65] Although the record indicates that Mr. Sampson is African-American,[66] he has failed to allege that he was treated differently than other similarly situated persons and his conclusory statement that his right to equal protection was violated does not suffice to support federal habeas relief.[67] Therefore, the undersigned recommends that this claim be denied.

### 2. Ineffective Assistance of Counsel

29.     Mr. Sampson contends that he was denied effective assistance of counsel because his trial attorney (a) failed to provide him with any copies of his plea agreement following the plea hearing held on February 28, 2005, (b) failed to keep him reasonably informed about his case or promptly comply with his reasonable requests for information, and (c) failed to explain his plea to the extent reasonably necessary for him to make an informed decision about the plea.[68]

---

[64]This claim is asserted in Mr. Sampson's Application (*Doc. 1*) at 6, by reference to Attachment D, and in Attachment D at 3.

[65]*City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

[66]*See* Application (*Doc. 1*), Attachment K.

[67]*See Body v. Watkins*, 51 Fed. Appx. 807, 810 (10th Cir. Oct. 16, 2002) (unpublished) (conclusory equal protection claim does not warrant federal habeas relief).

[68]This claim is asserted in Mr. Sampson's Application (*Doc. 1*) at 6, by reference to Attachment D, and in Attachment D at 4.

30. In evaluating an ineffective assistance of counsel claim, an attorney's performance is measured by the two-prong standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim under the *Strickland* standard, Mr. Sampson must show that (a) his attorney's performance fell below an objective standard of reasonableness, and (b) he was prejudiced by the attorney's deficient performance.[69] Both showings must be made to satisfy the *Strickland* standard.[70] To demonstrate unreasonable performance, Mr. Sampson must show that his attorney "made errors so serious" that his performance could not be considered "reasonable[ ] under prevailing professional norms."[71] Moreover, a showing of unreasonable performance requires that Mr. Sampson overcome the strong presumption that his attorney's conduct was within the wide range of reasonable professional assistance.[72] To demonstrate prejudice, Mr. Sampson must show a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for his attorney's alleged unprofessional errors.[73] In this case, because Mr. Sampson pled guilty, the prejudice prong of the *Strickland* standard requires him to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted

---

[69] *Strickland v. Washington*, 466 U.S. 687-88.

[70] *Id.* at 687.

[71] *Id.* at 687-88.

[72] *Id.* at 689.

[73] *Id.* at 694.

17

on going to trial."[74]  The Court does not have to address both prongs of the *Strickland* standard if the petitioner makes an insufficient showing on one of the prongs.[75]

31.     Applying the *Strickland* standard to Mr. Sampson's ineffective assistance of counsel claims, the Court finds no merit to the claims.  First, even if the Court assumes that Mr. Sampson's attorney failed to provide him with a copy of the plea and disposition agreement after the plea hearing, Mr. Sampson has failed to make the requisite showing of prejudice.  The record shows, and Mr. Sampson does not dispute, that he signed the plea and disposition agreement on February 28, 2005, and, pursuant to the agreement, entered his guilty plea on that date at his plea hearing.[76]  Mr. Sampson does not allege that he would not have pleaded guilty and would have insisted on going to trial if his attorney had given him a copy of the plea and disposition agreement *after* he entered his guilty plea and he has made no showing of a reasonable probability of this.  Second, Mr. Sampson's conclusory allegations that his attorney did not keep him reasonably informed about his case and did not promptly comply with his reasonable requests for information, which contain no explanation of how these alleged deficiencies affected his decision to plead guilty, are insufficient to meet the prejudice prong of the *Strickland* standard because they fail to explain how his attorney's conduct affected the outcome.[77]  Third, Mr. Sampson's conclusory allegation that his attorney failed to explain his plea to the extent reasonably necessary for him to make an informed

---

[74]*Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[75]*Strickland v. Washington*, 466 U.S. at 697.

[76]*See* Answer (*Doc. 14*), Exhibit C at 2; CD Digital Audio Recording of Plea Hearing on February 28, 2005, in Case No. CR-2004-0888-4 and Case No. CR-2004-0889-4.

[77]*See United States v. Mealy*, 851 F.2d 890, 908 (7th Cir. 1988) (conclusory allegations that do not explain how an attorney's alleged deficiencies resulted in prejudice fail to satisfy *Strickland* standard); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991) (*pro se* plaintiffs must allege sufficient facts on which a recognized legal claim can be based, and conclusory allegations will not suffice).

decision about the plea, fails to establish prejudice because any deficiency by Mr. Sampson's attorney was obviated by the state district judge's explanation of the plea, and its consequences, to Mr. Sampson at his plea hearing before he entered the plea.[78]

### *3. Failure to Provide Copies of Plea Agreement*

32.     Finally, Mr. Sampson contends that his trial attorney and the State refused to provide him with copies of his plea agreement solely for the purpose of keeping him from withdrawing his plea.[79] This claim should be denied because it is entirely conclusory and based on supposition wholly devoid of evidentiary support.

### *C. Conclusion*

33.     For the foregoing reasons, the undersigned finds that federal habeas relief is not warranted on Mr. Sampson's remaining claims in this case. Mr. Sampson has failed to establish that the adjudication of his claims on the merits in the State court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as

---

[78]*See Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) (state court's proper plea colloquy will cure any misunderstandings a petitioner may have had about the consequences of a plea). At Mr. Sampson's plea hearing, in response to questioning by the state district judge, Mr. Sampson indicated that he had signed the plea agreement, that he had reviewed the plea agreement with his attorney who explained it to him, that he had no questions about the plea agreement, and that his decision to enter into the plea agreement was voluntary and not coerced. *See* CD Digital Audio Recording of Plea Hearing on February 28, 2005, in Case No. CR-2004-0888-4 and Case No. CR-2004-0889-4. At the plea hearing, the judge explained to Mr. Sampson the maximum sentences for the charges to which he was pleading guilty, the fact that the sentences imposed would run consecutively, the meaning of the word "consecutive," the possibility that Mr. Sampson could go to jail on all three charges to which he was pleading guilty, the consequences of probation revocation, and the constitutional rights Mr. Sampson would be giving up by entering a guilty plea. *Id.* The factual basis of the plea was also reviewed at the hearing and, at the conclusion of the hearing, the judge found that the plea was knowing, intelligent and voluntary and the judge accepted the plea and found Mr. Sampson guilty of the charges. *Id.*

[79]This claim is asserted in Mr. Sampson's Application (*Doc. 1*) at 6, by reference to Attachment D, and in Attachment D at 8.

determined by the United States Supreme Court, or that is was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[80]

## RECOMMENDED DISPOSITION

For the foregoing reasons, the undersigned recommends that Respondents' *Motion to Dismiss* (*Doc. 29*) be **GRANTED**, that Mr. Sampson's *Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody* (*Doc. 1*) be **DENIED** as without merit, and that this case be **DISMISSED WITH PREJUDICE**.

_____
**HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**

---

[80]*See* 28 U.S.C. §§ 2254(d)(1)-(2).